## Exhibit C

**Engagement  Agreement**



June 10, 2026 **EXECUTION VERSION**

Mr. Thomas Gray
Chief Financial Officer
Danskammer Energy, LLC
994 River Road
Newburgh, NY  12550

Dear Mr. Gray:

This agreement ("Engagement Agreement") will serve as the contract between Danskammer Energy, LLC ("Danskammer" or the "Company") and SSG Advisors, LLC ("SSG") regarding the retention of SSG as exclusive investment banker to Danskammer for the purposes outlined in this Engagement Agreement. SSG's responsibilities hereunder involve providing investment banking services to the Company, on an exclusive basis, focusing on a Sale Transaction (as defined below).

A. **SSG's Role:**

1. Sale Services

- Advise on and assist Danskammer in the preparation of an information memorandum describing the Company and its operations, management, and financial status for use in discussions with prospective purchasers and assist in the due diligence process for a potential Sale Transaction;

- Create and manage an electronic data room with diligence materials about Danskammer;

- Assist Danskammer in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Company;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum and gain access to the data room;

- Assist Danskammer in coordinating management calls and site visits for interested buyers and work with the management team to develop appropriate presentations for such calls and visits;

- Solicit competitive offers from potential buyers;

- Advise and assist Danskammer in evaluating any proposals from potential buyers and investors, structuring the Sale Transaction, and

Mr. Thomas Gray
June 10, 2026
Page 2

negotiating the Sale Transaction agreements with potential buyers and investors;

- Provide testimony in support of the Sale Transaction, as necessary;

- Otherwise assist the Company, its attorneys and advisors, as necessary, through closing on a best efforts basis, including solicitation of third-party Debtor-in-Possession financing in the event of a Chapter 11 bankruptcy proceeding if requested and testimony thereon.

In performing the services described above, the Company will furnish or cause to be furnished to SSG such information as SSG reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information").  The Company represents to SSG that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of SSG's engagement hereunder, it will advise SSG promptly of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects.  The Company recognizes and confirms that SSG:  (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Company.  For the purposes of this Engagement Agreement, "known to," "to the knowledge of" or similar phrases means the actual knowledge, after due inquiry, of the executive officers of Danskammer.

The Company agrees that SSG shall be its exclusive investment banker in connection with any Sale Transaction undertaken with respect to the Company during the Engagement Term, as defined below, of this Engagement Agreement.  The Company agrees that, during the Engagement Term, SSG shall assist and advise the Company in its negotiations with all prospective purchasers and investors in connection with any Sale Transaction.  In that regard, the Company agrees to identify to SSG: (a) all prospective purchasers and investors who have been in contact with the Company prior to the date hereof and (b) all prospective purchasers and investors who come in contact with the Company during the Engagement Term.

SSG will consult with and advise the Company with respect to the financial aspects of any proposed Sale Transaction, including price, terms, and conditions of a Sale Transaction.  SSG will not, however, have any authority to bind the Company with respect to any proposed Sale Transaction.  Likewise, nothing contained herein shall require the Company to accept the terms of any proposal and the Company shall at all times have the right in its sole and absolute discretion to reject any proposed Sale Transaction regardless of the terms proposed.

B.  **SSG's Compensation**

As compensation for providing the foregoing services, SSG shall receive the following:

Mr. Thomas Gray
June 10, 2026
Page 3

1.  Initial Fee.  An initial fee (the "Initial Fee") equal to $75,000 due upon signing this Engagement Agreement or prior to the filing of a Chapter 11 bankruptcy proceeding;

2.  Monthly Fees.  Monthly fees (the "Monthly Fees") of $50,000 per month payable beginning July 15, 2026 and on the fifteenth (15th) of each month thereafter throughout the Engagement Term (as such term is hereafter defined).  Each Monthly Fee is earned on the first (1st) day of each month, without proration.

3.  Transaction Fee.  Upon the consummation of a Sale Transaction to any party as a going-concern or the sale of substantially all assets to one or more buyers, SSG shall be entitled to a fee (the "Transaction Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing such Sale Transaction and as a direct carveout from proceeds and cash, prior in right to any secured debt, equal to the greater of: (i) $500,000; or (ii) three (3.0%) percent of Total Consideration, as that term is hereafter defined.

    In the event of a sale(s) of individual assets, SSG shall be entitled to ten (10.0%) percent of the sale price of each asset Sale Transaction with no minimum fee.

4.  In addition to the foregoing Initial Fee, Monthly Fee, Transaction Fee, or Alternative Sale Fee noted above whether or not a Sale Transaction is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with the subject matter of this Engagement Agreement.

C.  **Definitions**

For the purpose of this Engagement Agreement:

**Total Consideration** shall mean the gross purchase price paid at the closing of the Sale for the equity, assets, or any portion of either, plus the assumption or payoff of indebtedness (secured and unsecured) of the Company.  Total Consideration will not be increased or decreased for cash or cash equivalents held by the Company and its subsidiaries immediately prior to the closing of a Sale Transaction.

For purposes of computing any fees payable to SSG hereunder, non-cash consideration shall be valued as follows:  (a) publicly traded securities shall be valued in the manner specified in the definitive agreement for the Sale, or, if not so specified, at the average of their closing prices (as reported in The Wall Street Journal) for the five (5) trading days prior to the closing of the Sale; and (b) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and SSG. If such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of SSG's fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are received.

Mr. Thomas Gray
June 10, 2026
Page 4

**Sale Transaction** shall mean a Sale or transfer, directly or indirectly, of all or a significant portion, of the assets or equity of Danskammer to any party.

D.   **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of six (6) months from the date of signing this Engagement Agreement and may be extended thereafter on a month-to-month basis until a Sale or Liquidation is completed and closed. Either party may terminate this Engagement Agreement upon thirty (30) days prior written notice to the other; provided, however, that this Engagement Agreement shall automatically terminate immediately upon the closing of a Sale Transaction.  Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that:  (a) termination of the Engagement Agreement shall not affect SSG's right to indemnification under the Indemnification paragraph below; (b) the Company shall remain obligated to pay SSG any unpaid Monthly Fees and to reimburse SSG for any expenses incurred through the date of the termination of the Engagement Agreement; and (c) if a Sale Transaction is consummated within twelve (12) months ("Trailer Term") of the termination of this Engagement Agreement with a party with whom SSG had contact during the Engagement Term, the Company shall remain obligated to pay a Transaction Fee, as calculated above; *provided*, however, that: (a) if this Engagement Agreement has been terminated for gross negligence, bad faith, actual fraud, or willful misconduct by SSG in the performance of SSG's duties under this Engagement Agreement and such conduct is determined as gross negligence, bad faith, actual fraud, or willful misconduct by an order of a court on final judgment, the Company shall have no further obligations to pay any additional fees; (b) if SSG voluntarily terminates this Engagement Agreement without cause, the Company shall have no further obligations to pay any additional fees. Sections B, D, E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of SSG's Duties, respectively) of this Engagement Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely.

E.   **Indemnification**

The Company hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F.   **Miscellaneous**

No fee payable to any other financial advisor or finder by the Company in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to SSG hereunder. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

Mr. Thomas Gray
June 10, 2026
Page 5

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G. **Scope of Duties**

The Company hereby acknowledges and agrees that: (a) it has retained SSG for the purposes set forth in the Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature, and (b) SSG has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Sale Transaction or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof.

H. **Bankruptcy Court Proceedings**

In the event the Company files one or more Bankruptcy Cases during the Engagement Term, the Company shall use its commercially reasonable efforts to have SSG employed upon the same or substantially similar terms and shall have this Engagement Agreement and SSG's retention as the Company's exclusive investment banker approved by a Court of competent jurisdiction.

I. **Other Matters**

SSG has the right, following a Sale Transaction closing, to place advertisements in financial and other newspapers and journals and to send email advertising at its own expense describing its services to the Company hereunder. SSG shall provide a draft of proposed advertisements and email advertising to the Company for review prior to distribution.

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of the Company, and its senior management team as well as other information that will allow SSG to properly identify its clients. Additionally, SSG maintains important disclosures on its web site www.ssgca.com. These disclosures may be updated periodically on an as-needed basis. The Company agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting SSG directly at (610) 940-1094.

J. **Securities Platform**

All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC. ("SCA") which is an affiliated registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). Principals of SSG are registered representatives of SCA. Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Engagement Agreement.

Mr. Thomas Gray
June 10, 2026
Page 6

To the extent a Transaction Fee is payable to SSG in connection with a Sale Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee (excluding the Initial Fee and Monthly Fees) shall be specifically paid to SCA. In addition to the Initial Fee and Monthly Fees, under no circumstances will the Company be obligated to pay any fees in an aggregate amount in excess of the Transaction Fee. Payment of the fee to SCA shall constitute and be deemed payment of the Transaction Fee under the Engagement Agreement.

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.


**SSG ADVISORS, LLC**


By: _____          _____

Teresa C. Kohl                                    J. Scott Victor
Managing Director                              Managing Director



ACCEPTED:

**DANSKAMMER ENERGY, LLC**


By: _____          June 10, 2026
Mr. Thomas Gray                                _____
Chief Financial Officer                         Date

Mr. Thomas Gray
June 10, 2026
Page 7

**ATTACHMENT A**
**INDEMNIFICATION PROVISIONS**

The Company agrees to indemnify, defend and hold harmless SSG or SCA, and their affiliates, the respective partners, members, directors, officers, agents and employees of SSG, SCA, and their affiliates and each other person, if any, controlling SSG, SCA, and their affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG acting for the Company under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with:  (a) any act or omission by SSG related to its engagement as investment banker under the Engagement Agreement; or (b) SSG's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement.  The Company will reimburse the Indemnified Parties for any reasonable and documented legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted from SSG's gross negligence, bad faith, actual fraud, or willful misconduct in the performance of its duties under said Engagement Agreement (and in such event, expenses of SSG paid by the Company in advance that are reasonably attributable thereto shall be promptly reimbursed in full to the Company).  The Company agrees that reliance by SSG on any publicly-available information, the information supplied by the Company to SSG in connection with said Engagement Agreement or any directions furnished by the Company shall not constitute gross negligence, bad faith or willful misconduct by SSG.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.