**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DANSKAMMER HOLDCO LLC, *et al.*, | Case No. 26-10950 (KBO) |
| Debtors.[1] | (Jointly Administered) |

**THE NEW YORK INDEPENDENT SYSTEM OPERATOR, INC.'S**
**MOTION FOR RELIEF FROM STAY TO EFFECTUATE A SETOFF**

The New York Independent System Operator, Inc. (the "***NYISO***"), a creditor of the above-captioned debtors and debtors in possession (the "***Debtors***"), hereby moves this court (the "***Motion***") pursuant to sections 362(d) and 553 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Local Rule 4001-1 for entry of an order for relief from the automatic stay to allow the NYISO to set off amounts otherwise payable prepetition by the NYISO to Debtor Danskammer Energy, LLC ("***Danskammer***") against the NYISO's prepetition claims against Danskammer.  In support of this Motion, the NYISO respectfully states as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Danskammer HoldCo LLC (6789), Danskammer Intermediate Holdings LLC (3429), Danskammer Holdings LLC (4480), and Danskammer Energy, LLC (6403).  The Debtors' corporate headquarters and the mailing address is 590 Madison Avenue, 41st Floor, New York, NY 10022.

**BACKGROUND**

4.     On June 10, 2026 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "***Chapter 11 Cases***") in this Court.

5.     The Debtors are operating their business and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

6.     As of the date of this Motion, no request for the appointment of a trustee or an examiner has been made in the Chapter 11 Cases.

**A.  The NYISO and the Electric Market Framework**

7.     The Federal Power Act ("***FPA***") grants the Federal Energy Regulatory Commission ("***FERC***") exclusive jurisdiction over the rates, terms, and conditions of service for the transmission and wholesale sale of electric energy in interstate commerce.

8.     In 1999, the New York State Public Service Commission ("***PSC***"), with authorization from FERC, established the NYISO to manage the State of New York's electric grid, improve reliability, and establish efficient, wholesale electricity markets.  The NYISO performs these services by, among other things, coordinating the flow of electricity across the high-voltage, long-distance power lines in New York among various market participants.

9.     The NYISO operates both a wholesale energy market as well as a capacity market, which it calls the Installed Capacity ("***ICAP***") market.  The capacity market secures commitments from power suppliers to meet peak demand and energy reserve margins mandated by regulators and electric reliability oversight organizations.  The relationship between the NYISO and market participants such as Danskammer is governed by the NYISO Market Administration and Control Area Services Tariff (the "***Services Tariff***") and the NYISO Open Access Transmission Tariff (the "***OATT Tariff***") approved by FERC.

10.     Pursuant to the Services Tariff, the NYISO administers the ICAP market, including ICAP spot market auctions (the "*ICAP Spot Market Auctions*") for specified obligation procurement periods.  The capacity auctions are competitive events where market participants secure the necessary resources to reliably meet peak demand.

11.     In connection with administering the ICAP Spot Market Auctions, the NYISO posts auction results and implements those results through its standard settlement, invoicing, and payment processes.  A market participant whose offer clears an ICAP Spot Market Auction becomes entitled to payment by the NYISO for that committed capacity once the NYISO posts the results of such ICAP Spot Market Auction.

12.     Separately, market participants may become obligated to pay penalties to the NYISO if, in accordance with Services Tariff §5.14.2, the NYISO determines that a market participant sold more "Unforced Capacity" than it is qualified to sell.

**B. Danskammer's Prepetition Market Participation**

13.     Prior to the Petition Date, Danskammer participated in, and was awarded capacity from, numerous ICAP Spot Market Auctions.

14.     However, on or about January 13, 2026, after an extensive investigation period, the NYISO notified Danskammer that the NYISO had assessed a capacity shortfall penalty against Danskammer in the amount of $13,450,921.50 (the "*Penalty*").  Accordingly, as of January 13, 2026, the amount of the Penalty was fixed and Danskammer owed the NYISO the Penalty.

15.     The Penalty arose from Danskammer's selling more committed capacity than it was qualified to sell, and for which Danskammer was awarded and paid in full by the NYISO over a several-year period pursuant to numerous ICAP Spot Market Auctions.

16.     The amount of the Penalty has been reduced by $1,630,041.68, as a result of the NYISO exercising its setoff rights prior to the Petition Date in the ordinary course.  Thus, as of the

Petition Date, the amount of the Penalty owed by Danskammer to the NYISO was $11,820,879.82. To date, Danskammer has not paid the balance of the Penalty.

17. The NYISO paid Danskammer in full for the committed capacity awarded to Danskammer from all of the prepetition ICAP Spot Market Auctions except for (i) the amounts the NYISO setoff prior to the Petition Date identified above; and (ii) the amounts the NYISO owed to Danskammer for the ICAP Spot Market Auction held during May 2026. Specifically, on May 28, 2026, the NYISO posted the results of an ICAP Spot Market Auction, which awarded Danskammer capacity and obligated the NYISO to pay Danskammer $3,277,855.00 (the "*May Auction Award*"). Although the NYISO's standard invoicing process with respect to the May Auction Award extended into the postpetition period, the NYISO's obligation to pay the May Auction Award became liquidated, owing, and non-contingent as of May 28, 2026.

18. As of the Petition Date, the NYISO owed Danskammer the amount of $3,283,950.50 based on both (i) the May Auction Award; and (ii) a relatively small amount attributable to prepetition energy sales Danskammer made to the NYISO in the amount of $6,095.50 (the "*Energy Debt*").

19. After learning of the Chapter 11 Cases, the NYISO placed prepetition amounts due but not-yet-paid to Danskammer on a provisional administrative hold in accordance with *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995) and its many progeny. As of the date of this Motion, such amounts include (i) $2,840,807.66 of the May Auction Award and (ii) the Energy Debt (the "*Held Funds*"). The Held Funds will increase to $3,283,950.50 on July 14, 2026, when the NYISO invoices the final portion of the May Auction Award in the ordinary course and places an administrative hold on such additional funds. The Held Funds do not include amounts

attributable to postpetition energy sales or amounts otherwise payable on account of any postpetition liability or debt owing from the NYISO to Danskammer.

20.     The NYISO has remitted, and will continue to remit, amounts due and owing on a postpetition basis to Danskammer in the ordinary course, subject to any postpetition setoff rights.

21.     Since the Penalty was assessed in January, the NYISO and Danskammer have engaged in discussions and dispute-resolution efforts concerning the possible resolution or adjustment of the Penalty.  These discussions have continued since the Petition Date.  To date, however, these discussions have not resulted in a mutually agreeable resolution.  Accordingly, mindful of timely filing a  stay relief motion with respect to the Held Funds, the NYISO files this Motion.  Nevertheless, to be clear, the NYISO remains willing to continue to engage in discussions with Danskammer about a potentially mutually agreeable resolution despite filing this Motion.

## RELIEF REQUESTED

22.     Pursuant to sections 362(d) and 553 of the Bankruptcy Code, Rule 4001(a) of the Bankruptcy Rules, and Local Rule 4001-1, the NYISO respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A,** (i) granting relief from the automatic stay to permit the NYISO to effectuate its rights to setoff the Held Funds against the Penalty, and (ii) granting any further relief as the Court deems just and proper.

## ARGUMENT

23.     The NYISO seeks to exercise its rights to setoff prepetition amounts otherwise payable by the NYISO to Danskammer against a prepetition claim owing from Danskammer to the NYISO.  Both (i) the May Auction Award and the Energy Debt; and (ii) the Penalty, represent liabilities fixed prior to the Petition Date.  The NYISO is entitled to setoff the Held Funds against the Penalty under applicable law, including the Services Tariff.  Accordingly, the NYISO seeks relief from stay to permit implementation of its setoff rights.

## I.     THE NYISO HAS A RIGHT TO SETOFF

24.     Setoff is an equitable right of a creditor to deduct a debt it owes to the debtor from a claim it has against the debtor arising out of a separate transaction. *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990). The right of setoff "allows entities that owe each other money to apply their mutual [prepetition] debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

25.     Section 553 of the Bankruptcy Code governs the application of setoff rights in bankruptcy cases and provides, in relevant part, that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553(a).

26.     Thus, section 553 does not create a new right of setoff; rather, it preserves setoff rights that otherwise exist under applicable nonbankruptcy law, while imposing additional requirements that must be satisfied before setoff may be effected in bankruptcy. *See Off. Comm. Of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Grp.)*, 146 F.3d 136, 138-39 (2d Cir. 1998); *Feltman v. Noor Staffing Grp., LLC (In re Corp. Res. Servs., Inc.)*, 564 B.R. 196, 200-06 (Bankr. S.D.N.Y. 2017); *In re SemCrude, L.P.,* 399 B.R. 388, 393 (Bankr. D. Del. 2009); *Sass v. Barclays Bank PLC (In re Am. Home Mortg. Holdings, Inc.)*, 501 B.R. 44, 56–57 (Bankr. D. Del. 2013).

27.     To establish a right of setoff under section 553, a creditor must show that: (a) it owes a debt to the debtor that arose before commencement of the case; (b) it holds a claim against

the debtor that also arose before commencement of the case; (c) the debt and the claim are mutual obligations; and (d) the right of setoff exists under applicable nonbankruptcy law. *Am. Home Mortg.*, 501 B.R. at 56–57; *SemCrude*, 399 B.R. at 393–97; *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 741–42 (Bankr. S.D.N.Y. 1995).

28.     The NYISO satisfies each of these four elements.

29.     First, the debt the NYISO owes to Danskammer arose before the Petition Date. Specifically, the NYISO's obligation to pay Danskammer the May Auction Award arose and became fixed no later than May 28, 2026, when the NYISO posted the results of that ICAP Spot Market Auction.  Similarly, the NYISO's obligation to pay Danskammer the Energy Debt arose and became fixed prior to the Petition Date.  Thus, the NYISO's obligation to pay the May Auction Award and the Energy Debt became liquidated, owing, and non-contingent before the Petition Date.

30.     Second, the NYISO's claim against Danskammer arose before the Petition Date. The NYISO assessed the Penalty on January 13, 2026, at which time the Penalty became immediately due, owing, and enforceable.  Thus, Danskammer's obligation to pay the NYISO the Penalty became liquidated, owing, and non-contingent before the Petition Date.

31.     Third, the obligations are mutual within the meaning of section 553.  The amounts the NYISO seeks to offset – the May Auction Award and the Energy Debt – are amounts the NYISO owes to Danskammer.  Similarly, the Penalty is an amount Danskammer owes to the NYISO.  This Motion therefore seeks a bilateral setoff between the same parties, in the same capacities, of debts that arose prior to the Petition Date.

32.     Finally, the NYISO has a setoff right under applicable nonbankruptcy law.  Among other things, under the Services Tariff, the NYISO has the express right to "net[], offset, set off,

or recoup" "all outstanding payment obligations under this ISO Services Tariff." Services Tariff § 7.1.2. Thus, the NYISO is entitled to setoff the Held Funds against the Penalty because the NYISO owes the May Auction Award and the Energy Debt under the Services Tariff and Danskammer owes the Penalty under the Services Tariff. *See id.* §§ 4.1.2, 7.1.2.

## II.     THE NYISO IS ENTITLED TO RELIEF FROM STAY

33.     The right to setoff is limited by the provisions of the automatic stay. Pursuant to section 362(a)(7) of the Bankruptcy Code, the automatic stay expressly applies to setoff. This provision enables the Court to determine the rights of the parties before debtors or their estates are deprived of their interest in the funds withheld by a creditor as a result of a setoff. *See In re Thomas*, 529 B.R. 636 (Bankr. W.D. Pa. 2015) ("The automatic stay therefore operates to enjoin rogue creditors from unilaterally obtaining preferential treatment by way of a 'setoff of any debt owing to the debtor that arose before the commencement of the case . . . against any claim against the debtor . . .'); *Stephenson v. Salisbury (In re Corland Corp.)*, 967 F.2d 1069, 1076 (5th Cir. 1992).

34.     Section 362(d)(1) of the Bankruptcy Code provides that a court may grant a creditor relief from stay for "cause." The Bankruptcy Code does not define what constitutes sufficient "cause" justifying relief from stay under § 362(d)(1). *See In re Sonnax Industries, Inc.,* 907 F. 2d 1280, 1285 (2d Cir. 1990). Therefore, the decision of whether or not to grant a creditor relief from stay for "cause" rests within the broad discretion of the bankruptcy court. *See In re Sonnax*, 907 F.2d at 1286; *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (courts must determine "cause" by examining the totality of the circumstances in each particular case).

35.     The existence of the right of setoff under applicable non-bankruptcy law, along with the showing that the additional conditions section 553 places on setoff are satisfied, generally

constitutes sufficient "cause" to grant stay relief. *In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012); *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000). Upon demonstrating a right to setoff, a creditor has established a prima facie showing of cause for stay relief under section 362(d)(1) of the Bankruptcy Code. *See Holber v. Suffolk Constr. Co. (In re Red Rock Servs. Co.)*, 480 B.R. 576, 617 (Bankr. E.D. Pa. 2012).

36.     Relief from stay is appropriate here.  As set forth above, the NYISO has demonstrated that it possesses a right of setoff under applicable nonbankruptcy law and that the requirements of section 553 are satisfied.  The NYISO accordingly seeks relief from stay so that it may setoff and net the Held Funds against the Penalty.

### NO PRIOR REQUEST

37.     No prior request for the relief sought herein has been made to this Court or any other court.

### CONCLUSION

WHEREFORE, for the reasons set forth herein, the NYISO respectfully requests that the Court enter an order, substantially in the form submitted herewith, modifying the automatic stay to permit the NYISO to setoff and net the Held Funds against the Penalty, and granting such other and further relief as the Court deems just and proper.

[*Reminder of page intentionally left blank*]

Dated: July 10, 2026          Respectfully submitted,


                              /s/  Michael Busenkell
                              **GELLERT, SEITZ, BUSENKELL & BROWN, LLC**
                              Michael Busenkell (Delaware Bar No. 3933)
                              1201 N. Orange Street, Suite 300
                              Wilmington, Delaware 19801
                              Telephone: (302) 425-5812
                              Email: mbusenkell@gsbblaw.com

                              -and-

                              **HUNTON ANDREWS KURTH LLP**
                              Jason W. Harbour (Delaware Bar No. 4176)
                              Jennifer E. Wuebker
                              951 E. Byrd Street
                              Richmond, Virginia 23219
                              Telephone: (804) 788-8200
                              Email: jharbour@hunton.com
                                     jwuebker@hunton.com

                              -and-

                              **DUNCAN LAW PS**
                              Bradley Duncan
                               P.O. Box 1620
                              Coupeville, WA  98239
                              Telephone: (206) 305-4907
                              Email: bduncan@bduncanlaw.com

                              *Counsel for the New York Independent System Operator, Inc.*